## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ALASKA

In re:

MARK J. AVERY,

      Debtor.

Case No. A06-00455-DMD
Chapter 7

**Filed On
9/14/07**

### MEMORANDUM REGARDING SUBSTANTIVE CONSOLIDATION

      William Barstow, the chapter 7 trustee in this bankruptcy proceeding, has moved for substantive consolidation of a number of corporations and LLCs formerly owned by the debtor, Mark Avery. These entities include: Avery & Associates, LLC, Regional Phone Solutions, LLC, Regional Paramedic Services, LLC, Security Aviation, Inc., High Security Aviation, LLC, Medic Air, Inc., Aero Resources, LLC, Regional Protective Services, LLC, Regional Property Services, LLC, Medical Training Institute, Inc., Security Aviation Rotorwing, LLC, Premier Aviation, Inc., and Regional Professional Services, LLC.[1] As to two of these entities, Security Aviation, Inc., and Medical Training Institute, Inc., the trustee requests partial consolidation, to allow for payment of valid creditors from each of these entities before their assets become subject to claims of the consolidated estates. Further, at the hearing on this motion, the trustee's attorney indicated that he wanted to reserve the issue of consolidation with regard to two additional entities: Medic Air, Inc., and Premier Aviation, Inc. As to the entities for which the trustee currently seeks relief, he asks for an order of consolidation *nunc pro tunc* to the date Avery's chapter 7 petition was filed,

---

[1] All of these entities were listed as "a/k/a's" of Avery on his bankruptcy petition (Docket No. 1, p. 2).

October 23, 2006.  He seeks to preserve all avoidance actions and also requests a new claims bar date for all the consolidated entities not previously in bankruptcy.

Debtor Mark Avery is the son of the late Luther Avery, a prominent San Francisco trust attorney.  Luther was one of three named trustees for various trusts set up by Stanley Smith, a wealthy Australian mining magnate, and his wife May Wong Smith.  Stanley Smith died in 1968 but his wife continued to live long after his death.  The trusts the Smiths established had substantial assets.  The May and Stanley Smith Charitable Trust had assets of $350 million and the May Smith Trust had assets of $150 million.

When Luther Avery died in 2001, Mark Avery succeeded to his position as trustee of the Smith trusts.  Mark, an attorney and former prosecutor, earned $600,000 a year as a trustee.  He was also entitled to bill the trusts for legal services.  After becoming trustee, Mark bought an expensive home in Eagle River in 2004.  Around the time of this purchase, he met Robert Kane through Kane's mother, a real estate broker.  With Kane's assistance, he moved May Smith from the Island of Guernsey off the coast of France to the Bahamas.  May Smith suffered from dementia and needed full-time care.  Yet she remained a trustee of her trust along with Avery and two other trustees, John Collins and Dale Matheny.  All of the assets of the May Smith Trust were held by Avenco Ltd., a Bahamian Corporation.  Avery, Collins and Matheny were the sole shareholders of Avenco.

After May Smith was relocated to the Bahamas, Avery, Collins and Matheny began to investigate various options for providing reliable air transportation services for May Smith in case she needed to be moved from the Bahamas for medical or other emergencies.  In early May of 2005, Avery approached his co-trustees about a prospective business arrangement with Douglas Gilliland and his company, World Air, Inc.  Under the proposal,

2

Gilliland would use the assets of Avenco to secure a line of credit for the purchase of two to three long-range aircraft for use with a government contract. It was contemplated that the aircraft would also be available to provide any needed air transportation for May Smith.

On May 11, 2005, the trustees met in San Francisco and considered Avery's proposal. They agreed to make $50 million in trust assets available to use as collateral for the purchase of the aircraft. Avery was put in charge of making all the arrangements. Instead of utilizing the trust assets for the Gilliland venture, however, Avery used the assets for his own purposes. He opened a margin account in Avenco's name and immediately began taking massive draws on the account. On June 7, 2005, he directed $15 million from the margin account to an account belonging to one of his wholly owned businesses, Avery & Associates. From June 16 through October 5, 2005, he directed an additional $37.125 million from the margin account to an account belonging to Regional Protective Services, another entity he controlled.

Avery went on a wild spending spree with the trust money. He spent nearly $10 million to acquire Security Aviation, Medic Air, Premier Aviation and Medical Training Institute. These entities were all well established businesses at the time of purchase. Avery purchased a wide variety of fixed and rotorwing aircraft with over $28.2 million in disbursements from the Avery & Associates and Regional Protective Services accounts. Title to most of the aircraft was held in Security Aviation or its subsidiaries, High Security Aviation and Security Aviation Rotorwing. Regional Protective Services held title to twelve L-39 Czech fighter jets, however. Avery also purchased numerous costly personal assets, including a $500,000 mooseboat, a yacht, several vehicles, and motorhomes for himself and Kane.

3

At around the same time the Czech fighters were purchased, Security Aviation bought rocket launchers for the planes. This wasn't a prudent purchase. The FBI raided Security Aviation's offices and seized documents concerning the rocket launchers and the fighters. Federal criminal charges were filed against Robert Kane and Security Aviation for possession of unregistered destructive devices on February 22, 2006. Paul Stockler was retained as a criminal defense attorney. Wells Fargo pulled its line of credit for Security Aviation. Avery, after receiving $52 million from the May Smith Trust just months before, was broke. He had to liquidate aircraft to pay for the cost of defending against the criminal charges. Between April 17 and July 27, 2006, $8,442,351.05 of the proceeds from Security Aviation's sale of aircraft was transferred to Stockler's bank and e-trade accounts. Stockler performed ably as an attorney; a jury found Kane and Security Aviation not guilty of the criminal charges. Avery's problems grew larger, however.

Kane alleged Avery owed him money on a back-dated promissory note and, at some point, Kane claimed all or a portion of the funds held by Stockler as his own. Avery had to borrow funds from Stockler's accounts to make Security Aviation's payroll. In July, 2006, Collins and Matheny, as trustees of the May Smith Trust, filed suit against Avery in San Francisco. They sought to remove Avery as a trustee and recover the $52.125 million he had taken. Avery surrendered the Security Aviation stock to the Trust. The Trust operated Security Aviation for a brief period of time.

Avery filed a chapter 7 petition on October 23, 2006. William Barstow was appointed chapter 7 trustee. Barstow settled the estate's preference claims against the Trust

4

and obtained court authority to operate Security Aviation.[2]  After assuming management, Barstow placed the corporation in chapter 11 on December 21, 2006.

On March 5, 2007, the United States filed criminal charges against Mark Avery for five counts of wire fraud and ten counts of money laundering arising out of his transactions with the May Smith Trust.  Avery immediately pled guilty to the charges.  His sentencing is set for this October.  Under his plea agreement, he faces a minimum of 14 years in prison.

Analysis

"The primary purpose of substantive consolidation 'is to ensure the equitable treatment of all creditors.'"[3]

> The theory of substantive consolidation emanates from the core of bankruptcy jurisprudence. . . . Orders of substantive consolidation combine the assets and liabilities of separate and distinct – but related – legal entities into a single pool and treat them as though they belong to a single entity.  Substantive consolidation "enabl[es] a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation."  The consolidated assets create a single fund from which all claims against the consolidated debtors are satisfied; duplicate and inter-company claims are extinguished; and, the creditors of the consolidated entities are

---

[2] *See* Order Granting Trustee's Application to Settle Preference Claims re: Security Aviation, Inc., and Application to Operate Business, entered December 11, 2006 (Docket No. 66).

[3] *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 764 (9th Cir.  2000) (citation omitted).

combined for purposes of voting on reorganization plans."[4]

A bankruptcy court has the discretion to order *nunc pro tunc* consolidation.[5] This may enable a trustee to preserve fraudulent transfer and avoidance proceedings with regard to related entities which might otherwise be barred due to statutes of limitation. But the court's power to order *nunc pro tunc* consolidation "should be used sparingly and must be tailored to meet the needs of each particular case."[6]

There has been no opposition to the motion for substantive consolidation as to the following Avery entities: Avery & Associates, LLC, Regional Phone Solutions, LLC, Regional Paramedic Services, LLC, Aero Resources, LLC, Regional Protective Services, LLC, Regional Property Services, LLC, High Security Aviation, LLC, Security Aviation Rotorwing, LLC, and Regional Professional Services, LLC. As noted in the trustee's motion, none of these entities were operating at the time Avery filed his petition. Each was owned, managed, and controlled by Avery and had no separate identity when this bankruptcy case was initiated. It is appropriate to combine the assets and liabilities of these entities and treat them as one. The trustee's motion will therefore be granted with respect to these "non-operational" entities.

The trustee's motion also asked for substantive consolidation as to Premier Aviation, Inc., and Medic Air, Inc., arguing that they were "non-operational" entities as well. At the hearing, however, the trustee's attorney asked to reserve the consolidation

---

[4] Bonham, 229 F.3d at 764 (citations omitted).

[5] *Id.* at 771.

[6] *Id.*

6

determination with regard to these two entities. That leaves two entities, Security Aviation, Inc. and Medical Training Institute, Inc. ("MTI"), at issue here.

The trustee seeks partial, rather than total, substantive consolidation of Security Aviation and MTI. The bankruptcy court can, in appropriate circumstances, order partial consolidation or place other conditions on substantive consolidation.[7] "The burden is upon the proponent of a motion for consolidation and is exacting."[8]

The Ninth Circuit has adopted two alternative tests to determine whether substantive consolidation is appropriate in a given case:

> "(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors." The presence of either factor is a sufficient basis to order substantive consolidation.[9]

The first test is designed for true substantive consolidation: the pooling of assets and liabilities of multiple corporations into one entity. The court should look at whether creditors dealt with the consolidated entities as if they were the same.[10] This factor isn't present with regard to Security Aviation and MTI. The trustee concedes as much in his motion, noting that the creditors of Security Aviation and MTI "appear to have relied on their separate

---

[7] *Bonham*, 229 F.3d at 769.

[8] *Reider v. Fed. Deposit Ins. Corp. (In re Reider),* 31 F.3d 1102, 1109 (11th Cir. 1994).

[9] *Bonham*, 229 F.3d at 766 (citation omitted).

[10] *Id.* at 771.

credit."[11]   Further, there appears to be little chance of a spillover of assets to the other consolidated entities, after payment of Security Aviation and MTI creditors, under the facts as they currently exist.[12]   Finally, the trustee's proposal for partial consolidation would effectively eviscerate the primary feature of substantive consolidation, the pooling of assets and liabilities, as to these two entities.  He proposes to bring into the consolidated estates any assets and liabilities which would remain after liquidation of Security Aviation and MTI and payment of the valid claims of each of these operating entities.[13]   But this would be the result, after liquidation of these two corporations, even absent consolidation – any remaining assets after payment of creditors would be returned to the Avery estate as owner of the two corporations.   In sum, the first test to be considered for substantive consolidation is not applicable to Security Aviation and MTI, particularly given the limitations proposed by the trustee.

The trustee has not made a case for substantive consolidation under the second test, either.  The second test permits substantive consolidation when "the affairs of the debtor are so entangled that consolidation will benefit all creditors."[14]

---

[11] Trustee's Mot. for Substantive Consolidation, filed Dec. 21, 2006 (Docket No. 71), at p. 20.

[12] Creditors in the Security Aviation case have submitted $2.2 million in unsecured claims, exclusive of a May Smith Trust claim for $20 million, a counter-claim of Air USA for $12.4 million, unliquidated tort claims of $15 million and Robert Kane's claim for just over $3 million.  The Air USA claim may be a duplicate of an unliquidated tort claim for $10 million filed by the estate of Steven Freeman.  Security Aviation was sold for $3.4 million.  Other asset sales have generated about $300,000.00.  The court has recently awarded $292,000.00 in administrative expenses and trustee William Barstow has a pending application for compensation in the amount of  $246,543.00.

[13] Trustee's Mot. for Substantive Consolidation, filed Dec. 21, 2006 (Docket No. 71) at p. 15.

[14] *In re Bonham,* 229 F. 3d at 766.

> Consolidation under the second [test] . . . is justified only where "the time and expense necessary even to attempt to unscramble [the affairs of the two entities is] so substantial as to threaten the realization of any net assets for all the creditors" or where no accurate identification and allocation of assets is possible.[15]

The apparent entanglement of affairs between Security Aviation and Avery has been substantially unraveled in the several months since the trustee's motion was filed. A large portion of time and expense has been expended to decipher Avery's financial affairs. Avery only operated Security Aviation for about 15 months. The financial transactions of both Avery and Security Aviation for this period have been thoroughly reviewed by a qualified accountant. Creditors and the trustee now know where Avery spent the Trust's $52 million. Any additional expenses which may be incurred to further unravel Avery's financial affairs are not so substantial as to threaten the realization of any net assets by creditors, and an accurate identification and allocation of assets appears possible. Substantive consolidation of Security Aviation and MTI is not justified under the second test.

Moreover, the trustee's primary reason for seeking *nunc pro tunc* consolidation as to Security Aviation now appears moot. The trustee's basis for seeking this relief was so he would have the ability to assume a hangar lease. But since December of 2006, when the trustee's motion was filed, the lease has been assumed and assigned with the sale of Security Aviation's assets. Substantive consolidation might allow the trustee to eliminate inter-company debt between Security Aviation and other entities.[16] Other benefits may also arise

---

[15] *Bonham*, 229 F.3d at 766 (citation omitted).

[16] According to a summary of bank activity for Avery & Associates and Regional Protective Services covering the period from June, 2005, through August, 2006, Security Aviation could owe Avery about $1.8

from a *nunc pro tunc* filing date.  However, the trustee hasn't  specified what other potential

benefits would arise from a *nunc pro tunc* consolidation of Security Aviation with the Avery

estate.   If the trustee does intend to forgive inter-company indebtedness between these

estates, I feel a more appropriate mechanism would be the one suggested by Stockler: file a

motion which seeks to forgive such indebtedness, explains the details of the debts to be

forgiven, and explains the net effects of such forgiveness on each set of creditors.   The

trustee should also provide further explanation if he seeks to adopt a *nunc pro tunc* date for

avoidance actions.  He should fully explain the advantages of this to creditors, showing the

net effect it will have on the respective estates.

As an alternative to partial substantive consolidation, the trustee argues that the

Avery and Security Aviation cases should be jointly administered, *nunc pro tunc*, to the date

the Avery petition was filed.

> Joint administration is a procedural tool
> permitting use of a single docket for
> administrative matters, including the listing of
> filed claims, the combining of notices to creditors
> of the different estates, and the joint handling of
> other ministerial matters that may aid in
> expediting the cases.   Used as a matter of
> convenience and cost saving, it does not create
> substantive rights.[17]

Before entering an order for joint administration, "the court shall give consideration to

protecting creditors of different estates against potential conflicts of interest."[18]   Here, a

---

million.  *See* Trustee's Mot. for Substantive Consolidation, Ex. F at pp. 11-12, filed Dec. 21, 2006 (Docket
No. 71).

[17] *Reider*, 31 F.3d at 1109 (citations omitted).

[18] Fed. R. Bankr. P. 1015(b)(2).

10

potential conflict exists between the estates of Security Aviation and Avery, e.g., the potential claims for inter-company debt. Further, given the current posture of these two cases, I see no real advantage to joint administration. At this point, combining the dockets of the two estates could generate confusion among the creditors in Avery's other, "non-operating" entities which are being consolidated with this case. In light of the fact that the Security Aviation and Avery estates will not be substantively consolidated, there is no basis for combining claims registers or notices that might be required for the two estates. Convenience to the trustee and his professionals is not a sufficient reason to order joint administration. The trustee's alternative request, for joint administration of the Security Aviation and Avery estates, will be denied.

Conclusion

The trustee's motion for substantive consolidation will be granted, in part, and denied, in part, as follows:

1)      The motion will be granted as to all Avery entities except for Security Aviation, Inc., Medical Training Institute, Inc., Medic Air, Inc., and Premier Aviation, Inc. Such consolidation will be *nunc pro tunc* to October 23, 2006. All avoidance actions for the consolidated entities will be preserved. The court will also set a new claims bar date for newly consolidated entities, only. A new claims bar date will not be set in the Avery case.

2)      The trustee's motion for partial substantive consolidation of Security Aviation, Inc. and Medical Training Institute, Inc. will be denied, without prejudice.

3)      The trustee's alternative request for joint administration of the Security Aviation, Inc., and Avery estates will be denied.

11

Barstow has filed an identical motion to consolidate in the Security Aviation case, No. A06-00559-DMD.  The court's ruling on that motion will be based upon the findings and conclusions contained in this memorandum.  Therefore, a copy of this memorandum will be docketed in the Security Aviation case as well.

Orders will be entered consistent with this memorandum in both the instant case and in *In re Security Aviation*, Case No. A06-00559-DMD.

DATED: September 14, 2007.

BY THE COURT

/s/ Donald MacDonald IV
Donald MacDonald IV
United States Bankruptcy Judge

Serve:        G. Spraker, Esq.
              S. Rader, Esq.
              T. Draeger, Esq.
              D. Bundy, Esq.
              M. Boutin, Esq.
              J. Ostrovsky, Esq.
              W. Barstow, Trustee
              U. S. Trustee
              Docketing Clerk (to docket copy of this memorandum in Case No. A06-00559-    DMD)

              09/14/07

12